UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------X
CHEYANNE HOLZWORTH,                  :
as Personal Representative for the   :
Estate of William Andrew Holzworth   :
                                     :
                   Plaintiff,        :
                                     :
      -against-                      :
                                     :
                                     :
ALFA LAVAL INC., et al.              :
                                     :
                   Defendants.       :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/21/2016

No. 12 Civ. 06088 (JFK)

**MEMORANDUM
OPINION & ORDER**

APPEARANCES
FOR PLAINTIFF CHEYANNE HOLZWORTH:
    Derell Dereck Wilson, Esq.

FOR DEFENDANT INGERSOLL-RAND COMPANY:
    Lisa M. Pascarella, Esq.
    Keith M. O'Connor, Esq.

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is an unopposed motion for summary judgment by Defendant Ingersoll-Rand Company ("Ingersoll"). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Ingersoll seeks summary judgment as to each of Plaintiff's six causes of action alleged in the Amended Complaint. For the reasons stated below, the motion is granted.

### I.  Background

    It is undisputed that the decedent, Mr. William Andrew Holzworth ("Mr. Holzworth" or "Decedent"), served as a sonarman in the U.S. Navy between 1952 and 1955. (See Holzworth Dep., 758:8-23, Aug. 9, 2012; O'Connor Ex. B ¶ 10; id. Ex. D, at 8;

id. Ex. E, at 1.)  Thereafter, Mr. Holzworth worked as a
construction manager and project manager at various construction
sites between May 1963 and November 2007. (O'Connor Ex. E, at 1-
4.)

At his deposition, Mr. Holzworth testified that he
encountered Ingersoll products in the form of pumps on the two
naval vessels where he served, the U.S.S. Edisto (AGB 2) and the
U.S.S. Sheldrake (AGS 19). (See Holzworth Dep., 753:16-758:4.)
Generally, Mr. Holzworth testified that he was exposed to pumps
like those manufactured by Ingersoll in two different ways.
First, Mr. Holzworth was exposed to Ingersoll pumps as a
bystander in the seamans' sleeping quarters and when ordered to
the engine room to find other seamen while on watch. (See id.
753:20-54:4, 761:23-62:3.)  Second, Mr. Holzworth was exposed to
pumps when he volunteered to clean them as a favor to his
friend, a fellow seaman. (See Holzworth Dep. 849:5-20; 852:6-9;
863:23-64:3, Aug. 14, 2012).

Mr. Holzworth did not specifically describe the composition
of Ingersoll pumps.  Describing similar pumps made by Viking
Pump, Inc., however, Mr. Holzworth identified the types of pumps
in question as forged from cast iron. (See id. 846:3-12.)  When
assisting his friend, Mr. Holzworth testified that he scraped
asbestos material from flange gaskets and valves, which are
component parts to the pumps. (See id. 849:5-20; 863:9-64:3;

2

865:18-22.)  Additionally, Mr. Holzworth testified that the gaskets contained packing—a long, continuous piece of rope ringed around the gasket—and, sometimes, the valves were encased in a "jacket" or "diaper."  Mr. Holzworth testified that the packing and jackets contained asbestos. (See id. 853:3-24; 866:2-14; 869:5-20; 874:17-21.)  Mr. Holzworth testified, however, that many valves and pumps were refurbished and replaced, that he could not identify the manufacturer of the packing or jackets, and that he was unaware of the maintenance history of the pumps or whether the pieces he cleaned were original or replacements. (See id. 756:15-57:5, Aug. 9, 2012; id. 851:2-52:9; 862:14-17; 868:4-19; 874:6-21, Aug. 14, 2012.)

## II.  Procedural History

Mr. Holzworth initially filed the complaint in this action in New York Supreme Court on July 9, 2012. (O'Connor Decl. Ex. B.)  On August 9, 2012, former Defendant Crane Co. removed the action to this Court under 28 U.S.C. § 1442(a)(1), which provides for federal jurisdiction in cases involving persons acting under the direction of a federal officer. (ECF No. 1.)

On September 7, 2012, pursuant to 28 U.S.C. § 1407, the U.S. Judicial Panel on Multidistrict Litigation transferred this action to the Eastern District of Pennsylvania for consolidated pretrial proceedings before the Honorable Eduardo C. Robreno. (ECF No. 10.)  On October 31, 2013, Judge Robreno determined

3

that this action was ready for trial and remanded it to this Court. (ECF No. 13-99).

While this action was pending in the Eastern District of Pennsylvania, on December 8, 2012, Mr. Holzworth passed away. (ECF No. 27-2.) Mr. Holzworth's Certification of Death listed the cause of death as lung cancer-mesolthelioma. (Id.) On February 4, 2014, the Orange County, Florida Circuit Court Probate Division declared Mr. Holzworth's daughter, Cheyanne Holzworth ("Ms. Holzworth" or "Plaintiff"), duly qualified under the laws of the State of Florida to act as personal representative of Mr. Holzworth's estate. (ECF No. 27-3.)

On March 7, 2014, Mr. Holzworth's counsel moved to amend the summons and complaint to add a cause of action for wrongful death and to substitute Ms. Holzworth as Plaintiff in her capacity as the personal representative of Mr. Holzworth's estate. (ECF No. 27.) This Court granted the motion on March 11, 2014, (ECF No. 31), and Ms. Holzworth filed the amended complaint on March 27, 2014. (ECF No. 42.)

The Amended Complaint makes no specific allegations about Ingersoll. In the Amended Complaint, the Plaintiff alleges that the Decedent was exposed to various asbestos-containing products during two periods. First, between 1952 and 1955,[1] while the

---

[1] The actual years listed in the Amended Complaint are 1950 through 1954. As part of his interrogatory responses, however,

4

Decedent served in the U.S. Navy aboard the U.S.S. Edisto (AGB 2) and the U.S.S. Sheldrake (AGS 19). Second, between 1963 and 2007,[2] while working as a construction manager and project manager. (O'Connor Decl. Ex. B ¶¶ 5, 10.) The Amended Complaint asserts six causes of action: failure to warn (Count 1); negligence (Count 2); strict liability (Count 3); wrongful death based on negligence (Count 4); wrongful death based on strict liability (Count 5); and wrongful death based on breach of warranty (Count 6). (See generally O'Connor Decl. Ex. B; ECF No. 42).

On May 15, 2015, Defendant Ingersoll moved for summary judgment. (ECF Nos. 53-55.) Ingersoll asserts that there is no genuine dispute of material fact that (1) Plaintiff has failed to identify Ingersoll products that caused Decedent's mesothelioma and resultant death, (2) Defendant Ingersoll has no duty under the applicable law to warn of hazards associated with another manufacturer's product, and (3) Defendant Ingersoll is entitled to the "bare metal" defense. (ECF No. 55.) Plaintiff

---

Mr. Holzworth indicated that his service was from 1952 to either 1954 or 1955. (See O'Connor Decl. Ex. E, at 1.) These later dates are confirmed by Mr. Holzworth's DD-214, which states that he completed 3 years, 11 months, and 14 days of service on December 16, 1955. (See id. Ex. F, at 5.)

[2] The actual years in the Amended Complaint are 1982 through 2007. Mr. Holzworth's interrogatory responses, however, indicate that his construction work began nearly two decades earlier in 1963. (See id. Ex. E, at 2.)

did not oppose this motion.  For the reasons stated below, the motion is granted.

### III.  Discussion

#### A.  Standard of Review[3]

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  For summary judgment purposes, a genuine dispute as to any material fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014).  In ruling on a motion for summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Curry v. City of Syracuse, 316 F.3d 324, 329 (2d Cir. 2003).

---

[3] The movant failed to include a separate, short and concise statement of the material facts as to which it contends there is no genuine issue to be tried, as required by Local Civil Rule 56.1.  Under the Local Civil Rule, the Court may deny the motion for summary judgment on these grounds. See S. & E.D.N.Y. LOCAL CIV. R. 56.1(a).  Nevertheless, because the Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d. Cir. 2001) (internal quotation marks omitted), abrogated on other grounds by Gross v. FBL Fin. Servs., 557 U.S. 167 (2009), and, on an unopposed motion, is in fact required to conduct such a review, see Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004), the court declines to deny the motion solely on these grounds.

Where, as here, the summary judgment motion is unopposed, it "does not, of course, mean that the motion is to be granted automatically." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam).  Rather, the Court must "examin[e] the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001).  The Court does so by, first, determining whether any material facts are genuinely disputed in the record presented on the motion, and, second, assuring itself that the "facts as to which there is no genuine dispute show that the moving party is entitled to a judgment as a matter of law." Champion, 76 F.3d at 486 (internal quotation marks omitted).  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, or if the undisputed facts fail to show that the movant is entitled to judgment as a matter of law, then summary judgment must be denied even if no opposing evidentiary matter is presented. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

## B.  Governing Law

As noted above, Mr. Holzworth's exposure to Ingersoll's products occurred during his naval service.  Accordingly, the Court normally would need to consider whether maritime or New

York law should apply.[4]  On this motion, however, the relevant maritime law and state law are congruous, as shown below.

### C.  The Plaintiff Has Not Raised a Genuine Issue of Material Fact Concerning Mr. Holzworth's Exposure to Ingersoll's Asbestos-Containing Products

Essential to the Plaintiff's negligence, strict liability, and breach of warranty theories is that Mr. Holzworth was exposed to asbestos-containing products manufactured by Ingersoll.  For negligence and strict liability theories, the plaintiff must prove, "for each defendant, that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." See Lindstrom v. A-C Prod. Liab. Tr., 424 F.3d 488, 492 (6th Cir. 2005) (general maritime law); In re Joint E. & S. Dists. Asbestos Litig., No. 92 Civ. 1113 (RWS), 1993 WL 97301, at *1 (S.D.N.Y. Mar. 30, 1993) (New York law); see also Perkins v. Air & Liquid Sys. Corp., No. 13 Civ. 8561 (CM), 2015 WL 4610671, at

---

[4] In its brief, the movant implies that the transferee court's decision in Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011) controls here. (See ECF No. 55, at 18-23.) While doctrines such as law of the case and collateral estoppel should apply when a transferee court has made decisions in the same case, see MANUAL FOR COMPLEX LITIGATION § 20.133, at 226 (4th ed. 2004); Deutsch v. Novartis Pharms. Corp., 768 F. Supp. 2d 420, 428 (E.D.N.Y. 2011), the Conner opinion did not involve Mr. Holzworth or the Plaintiff.  Accordingly, this Court has considered the Conner opinion, but does not view it as directing any specific result in this case. See Johnson v. FedEx Home Delivery, No. 04-CV-4935(JG)(VVP), 2011 WL 6153425, at *7 (E.D.N.Y. Dec. 12, 2011).

*6-7 (S.D.N.Y. July 30, 2015) (comparing maritime law and New York law on this point and finding them congruent).[5]

   The Plaintiff has not provided any evidence that the Decedent was exposed to any asbestos-containing products produced by Ingersoll.  While the Decedent testified that he was exposed to cast-iron pumps produced by Ingersoll, his deposition testimony and his interrogatory responses fail to identify Ingersoll as the manufacturer of the asbestos-containing gaskets or other pump pieces.  Ms. Holzworth "cannot prevail, under either New York or maritime law, simply by showing that Mr. [Holzworth] was present on a ship that contained [Ingersoll] products that were wrapped in asbestos." Perkins, 2015 WL 4610671, at *8; see also Crews v. Air & Liquid Sys. Corp., No. 7:12-cv-1678, 2014 WL 639685, at *4-5 (N.D.N.Y. Feb. 18, 2014) (granting summary judgment to a valve manufacturer where there was no evidence in the record that the plaintiff had been able to identify whether the replacement gaskets and packing

---

[5] Breach of warranty claims are governed exclusively by state law. See E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 872 n.7 (1986).  Like negligence and strict liability, New York's breach of warranty cause of action requires plaintiff to prove that the product was a substantial factor in causing the injury and, thus, that he encountered the allegedly defective product. See Donovan v. Centerpulse Spine Tech, Inc., 416 F. App'x 104, 106 (2d Cir. 2011) ("Under New York law, whether the action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury." (internal quotation marks omitted)).

materials to which he was exposed were products supplied by the defendant).

Ultimately, the Plaintiff has offered no evidence that the Decedent was exposed to Ingersoll's asbestos-containing products, much less that any exposure to Ingersoll products was a substantial factor in the Decedent's injuries.  As a result, even drawing all justifiable inferences in the Plaintiff's favor, a reasonable jury could not find that Ingersoll caused the Decedent's injuries under either a negligence, strict liability, or breach of warranty theory.

**D.  The Plaintiff Has Not Raised a Genuine Issue of Material Fact Concerning Ingersoll's Failure to Warn**

Because there is no evidence that the Decedent was exposed to Ingersoll's asbestos-containing products, Ingersoll's liability for failure to warn is limited to its duty—to the extent that any exists—to warn Mr. Holzworth about the danger of third-party products used in connection with Ingersoll's pumps.

In such cases, "where there is no evidence that a manufacturer had any active role, interest, or influence in the types of products to be used in connection with its own product after it placed its product into the stream of commerce, it has

no duty to warn." <u>In re N.Y.C. Asbestos Litig.</u>, 121 A.D.3d 230, 250 (1st Dep't 2014).[6]

The Plaintiff has not provided any evidence to suggest that Ingersoll had any role, interest, or influence whatsoever in the products that the Navy used in connection with its pumps, much less that Ingersoll actively participated in, knew of, or manufactured products that necessitated the use of third-party asbestos-containing products. The Decedent's deposition testimony and interrogatory responses state only that Ingersoll manufactured cast-iron pumps. This evidence, standing alone, does not raise a genuine dispute as to whether Ingersoll placed the asbestos-containing components into the stream of commerce,

---

[6] District courts applying maritime law have varied in the standard they have applied. <u>Compare</u> <u>Conner v. Alfa Laval, Inc.</u>, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012) ("[U]nder maritime law, a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute."), <u>with</u> <u>Quirin v. Lorillard Tobacco Co.</u>, 17 F. Supp. 3d 760, 769-70 (N.D. Ill. 2014) ("[A] duty may attach where the defendant manufactured a product that, by necessity, contained asbestos components, where the asbestos-containing material was essential to the proper functioning of the defendant's product, and where the asbestos-containing material would necessarily be replaced by other asbestos-containing material, whether supplied by the original manufacturer or someone else.") These standards are either equally or more burdensome for the plaintiff than New York law. Because the Plaintiff has failed to demonstrate that Ingersoll manufactured or distributed asbestos-containing materials, that Ingersoll's pumps required asbestos-containing materials, or that Ingersoll played an active role in the use of asbestos-containing materials, she has not shown there is a genuine dispute of material fact under any of these standards.

played an active role in their use, or manufactured pumps that required such components. Cf. In re N.Y.C. Asbestos Litig., 121 A.D. 3d at 251 (finding that the defendant owed a duty to warn regarding third party products where "the evidence demonstrate[d] that [the defendant] influenced the Navy's choice of valve components following the initial shipment, and played a leading role in creating the culture and regulations that encouraged and eventually mandated the use of asbestos for insulation"); Berkowitz v. A.C. & S., Inc., 288 A.D.2d 148, 149 (1st Dep't 2001) (finding that the defendant owed a duty to warn regarding third-party products where evidence showed that the government provided certain specifications regarding pump insulation and that the defendant "knew [the insulation] would be made out of asbestos").

As Plaintiff has produced no evidence that Ingersoll knew of or otherwise influenced the Navy's use of asbestos-containing materials produced by third parties, there is no genuine dispute as to any material fact relating to Ingersoll's lack of a duty to warn Mr. Holzworth of the dangers of third-party products.

### E.   The Plaintiff's Wrongful Death Causes of Action Against Ingersoll Fail As a Matter of Law

Finally, the Plaintiff's wrongful death causes of action must fail as a matter of law because the Plaintiff did not

produce any evidence that the Decedent was exposed to asbestos-containing materials manufactured by Ingersoll.

New York's wrongful death statute allows for recovery "for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." N.Y. ESTATES, POWERS, & TRUSTS LAW § 5-4.1(1); see also Chong v. N.Y.C. Transit Auth., 83 A.D.2d 546, 547 (2d Dep't 1981).[7]

Because the Plaintiff's wrongful death actions arise from the same conduct that is insufficient to establish Ingersoll's liability under theories of negligence, strict liability, and breach of warranty, her wrongful death claims—which require Ingersoll to be liable for the injury causing Mr. Holzworth's death—are equally insufficient.

### III.  Conclusion

For the foregoing reasons, Defendant Ingersoll's unopposed motion for summary judgment is granted.   The Court therefore

---

[7] General maritime law does not preclude seeking recovery under state wrongful death statutes where, as here, Congress has not expressly preempted them. See Yahama Motor Corp, U.S.A. v. Calhoun, 516 U.S. 199, 215-16 (1996).  Plaintiff does not indicate whether she pursues her wrongful death claims under New York law or maritime law.  To the extent that the Plaintiff brings her wrongful death claims exclusively under general maritime law, consistent with New York law, she must prove an underlying wrongful act or breach of duty. See Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 820 (2001).

directs the Clerk to enter judgment in Defendant Ingersoll's

favor in accordance with this order.

**SO ORDERED.**

Dated:     New York, New York
           January 21, 2016

John F. Keenan
United States District Judge